SPECIAL INDEMNITY FUND v. SIMS et al.

No. 31952. Nov. 6, 1945.

*163 P. 2d 210.*

Mont R. Powell, T. D. Lyons, and L. B. Moore, all of Oklahoma City, for petitioners.

W. C. Franklin, of Tulsa, W. A. Bullis, of Oklahoma City, and Randell S. Cobb, Atty. Gen., for respondents.

WELCH, J. Claimant while employed by Alexander H. Kerr & Company, manufacturer of glass fruit jars, sustained an accidental injury on October 8, 1943, in the course of employment. Employer's first notice of injury filed October 16, 1943, in describing how the accident occurred, stated: "Struck head against protruding metal bar." The employee's first notice of injury filed March 21, 1944, gave as cause of accident; "Struck head against protruding metal bar," and in describing nature and extent of injury stated: "Complete blindness — left eye. Previously blind in right eye."

The evidence is to the effect that claimant received a blow to his left temple and developed severe headaches and dizziness and trouble with his left eye. He received medical treatment and hospitalization and several operations in an effort to preserve the sight of the left eye over a period of several months, but the eye grew progressively worse and at some time prior to the hearing the vision was completely gone. That the loss of vision to the left eye was the result of the accident is not questioned here.

The commission awarded claimant 500 weeks' compensation at $18 per week and directed that the employer and insurance carrier pay the first 100 weeks thereof, or a total of $1,800, and directed that the Special Indemnity Fund pay 400 weeks, or a total of $7,200. There has subsequently been filed with the commission in the case a receipt from the claimant showing total payment by the employer of $2,088.

In this proceeding by the Special Indemnity Fund alone it is first urged:

"That the employment and duties of the respondent, Darr B. Sims, are exclusively clerical, and, therefore, not hazardous within the purview of the Workmen's Compensation Law."

Thereunder it is pointed out that 85 O.S. 1941 § 2 specifically exempts ". . . employees employed exclusively as clerical workers, . . ." and it is urged that the evidence in this case shows the claimant to have been such an employee. We have examined the entire record in that respect and find that same abundantly supports the findings of the commission to the contrary. This man was employed primarily as a stock room clerk and his duties consisted largely in placing, checking and handling stocks of steel, heavy machinery parts and supplies.

The Special Indemnity Fund further urges:

"That the State Industrial Commission erred in not allowing as a credit the amount of temporary total disability resulting from the subsequent injury to the respondent, Darr B. Sims."

Petitioner's theory thereunder is that the employer was required to pay all of that portion of the award which represents compensation for temporary disability and that portion which represents 100 weeks for the loss of one

eye and that the fund was chargeable only with the balance of a maximum award of 500 weeks. It asserts herein that the employer has paid the 100 weeks at $18 per week, the statutory amount provided for the loss of one eye, and an additional sum of $288 for temporary disability. Those payments totaled $2,088. The commission's order directed the fund to pay 400 weeks at $18 per week, or a total of $7,200. These aggregate sums exceed the maximum of $9,000 which a claimant may receive for a single injury as held in Oklahoma Natural Gas Corporation v. Smith, 147 Okla. 221, 296 P. 454, and Federal Mining & Smelting Co. v. Warman, 145 Okla. 281, 292 P. 865. Therefore, it is contended that the fund should be charged with a total of only $6,912.

In that connection we examine H. B. No. 249, page 258, S. L. 1943, the applicable portion of which is now contained in 85 O.S. 1943 Supp. § 172, as follows:

"If an employee, who is a 'physically impaired person,' receives an accidental personal injury compensable under the Workmen's Compensation Law, which results in additional permanent disability so that the degree of disability caused by the combination of both disabilities is materially greater than that which would have resulted from the subsequent injury alone, the employee shall receive compensation on the basis of such combined disabilities, as is now provided by the laws of this state, but the employer shall be liable only for the degree or per centum of disability which would have resulted from the latter injury if there had been no pre-existing impairment. . . .

". . . provided, further, that nothing herein shall limit the amount of compensation now provided by the Workmen's Compensation Law for temporary disability, and such temporary disability, together with all medical expenses, shall be paid as now provided by the Workmen's Compensaition Law, and no part of the same shall be charged against such Special Indemnity Fund."

Prior to the passage of section 172,

supra, a person who had previously lost an eye, as had this claimant, might receive an award for a maximum amount of $9,000, exclusive of medical expenses, etc., Oklahoma Nat. Gas Corp. v. Smith, and Federal Mining & Smelting Co. v. Warman, supra, in case of the loss of the other eye, whereas had the employee had good sight in both eyes, the loss of only one would entitle him to an award of only 100 weeks plus a maximum of 300 weeks for temporary disability and medical expense.

As a result thereof there appeared to be some reluctance to give work to such persons as had theretofore sustained some physical impairment.

The Legislature, in 1943, by the above enactment and in the promotion of the public social and industrial welfare, sought to eliminate the extra burden theretofore assumed by the employer in employing such persons as are enumerated in the act. There was no legislative purpose to allow the employee a less or greater maximum award than he would have obtained under previous law, nor to fix a greater or less liability on the employer in cases where the same injury was received by a "physically impaired person" than in the case of one not so classified.

Under the specific provisions of section 172, supra, this employer ". . . shall be liable . . . for the degree or per centum of disability which would have resulted from the latter injury if there had been no pre-existing impairment." And in addition thereto, " . . . the amount of compensation . . . provided by the Workmen's Compensation Law for temporary disability, . . . which amount as theretofore provided was not limited by the 1943 Act.

The Workmen's Compensation Law in existence prior to the 1943 Act provided for an award for temporary disability as a specific injury. Smith & McDonnald et al. v. State Industrial Comm. et al., 133 Okla. 77, 271 P. 142; Thompson v. State Industrial Comm. et al., 138 Okla. 166, 280 P. 597; H. E. Turner Drilling Co. et al. v. Pendley

et al., 142 Okla. 290, 286 P. 886; Barnsdall Refining Co. v. Ramsdall et al., 149 Okla. 99, 299 P. 499; Dailey Crawford & Pevetoe et al. v. Rand et al., 155 Okla. 229, 8 P. 2d 738; Geis Price Grain Co. et al. v. Bailey et al., 155 Okla. 302, 9 P. 2d 424; Loffland Bros. Drilling Co. et al. v. State Industrial Comm., 157 Okla. 78, 10 P. 2d 1096. And we observe that the 1943 Act carefully preserved the existing law in that respect and carefully continued the employer's liability therefor, obviously upon the theory that such character of disability was the direct result of the new injury.

The order of the commission required the employer to pay only $1,800, which is obviously for 100 weeks of the permanent disability. The present order contains nothing to indicate what may have been previously ordered to be paid as temporary disability. The respondent would seem to concede that the whole of the $2,088 paid in the case was paid by the employer. It seems most logical, as contended by petitioners and not denied by respondents, that the excess paid by the employer was for temporary disability.

To permit the award to stand, without allowing credit on the maximum amount which the claimant might receive, for the $288 paid for temporary disability, would be contrary to law as above shown. Under the express provisions of the 1943 legislative act, supra, this temporary disability payment remains an obligation of the employer and the remainder of the maximum award is an obligation of the Special Indemnity Fund. Since $2,088 has been paid claimant, he is entitled only to a balance of $6,912 to be paid by such fund.

The award is, therefore, vacated, with instructions to make an award in compliance herewith.

HURST, V. C. J., and OSBORN, BAYLESS, CORN, and DAVISON, JJ., concur. GIBSON, C. J., and ARNOLD, J., concur in conclusion.

ARNOLD, J. (concurring specially). By the plain, unambiguous import of the language of the section of the statute being construed and all the circumstances, historical and otherwise, the Legislature intended that the injured employee should receive compensation for the combined disability resulting from pre-existing disability and that inflicted by his employer "as is now provided by the laws of this state"; and that the employer should only pay the portion of the permanent disability that would have existed if no pre-existing disability had existed; and that the employer should pay all temporary disability and medical expense; that the Special Indemnity Fund should pay for the portion of permanent disability that the pre-existing condition brought about in combination with the present injury inflicted by the employer. At the time of the enactment of the Special Indemnity Fund Act the employer was liable for all disability attending an accidental injury to his employees, including temporary and permanent disability, combined or otherwise; the only limitation on such liability was 500 weeks. He was liable for reasonable medical expense in addition to his responsibility for disability.

It is common knowledge that the liability imposed by law on the employer for the combined effects or disability resulting from pre-existing disability and a present injury caused employers to reject for employment physically impaired persons. To correct this situation by placing a portion of the liability in such combined injury cases on another than the employer, the Special Indemnity Fund Act was enacted. The fund to pay awards made against the Special Indemnity Fund is created in the manner prescribed by the act; the insurance thus obtained for the purpose indicated is not a charity. The fund and the insurance carrier of the employer are therefore on equal footing. The employee receives no more and no less since the fund was created. Acts that are remedial, and this one clearly is, should be liberally construed to effectuate the remedy intended.

The evil to be remedied here is the inability of previously impaired persons to procure employment because of the refusal of employers to accept the responsibility for combined disability imposed by law in certain cases which might have the effect of increasing the disability over that actually inflicted by him and resulting directly from the injury manyfold. The majority opinion distorts the intention of the Legislature plainly expressed and interprets the section in such a manner as to restrict the remedy intended by imposing a liability that never existed.

Having provided that the employee shall be paid compensation on the same basis as now provided by law, the Legislature then said, "but the employer shall be liable only for the *degree* or *percentum* of disability which would have resulted from the latter injury if there had been no pre-existing impairment". Surely the Legislature would not have used the words "degree" or "percentum" in reference to anything but permanent disability. By this expression it was intended to say that the employer shall be liable for only the amount of permanent disability that would have existed except for the pre-existing condition. This being true, it was then provided " . . . that nothing herein shall limit the amount of compensation now provided by the Workmen's Compensation Law for temporary disability; and such temporary disability, together with all medical expenses, shall be paid as now provided by the Workmen's Compensation Law, and no part of the same shall be charged against the Special Indemnity Fund." A temporary disability is one that lasts for only a period of time, sometimes equivalent to the so-called healing period, after which there may be no disability or there may be some permanent partial disability. The commission in this case correctly determined that the injured employee was permanently and totally disabled from the date of the accident. There was therefore no *temporary* disability. To charge an imaginary temporary disability and compensation therefor to the employer puts on him a burden that never existed and cannot exist under the Workmen's Compensation Law or the Special Insurance Fund Act and amounts to judicial legislation which restricts the remedial purpose of the fund act, and will, in my judgment, have the effect of thwarting the purpose of the Legislature to the injury of workmen covered by the Workmen's Compensation Law.

It is conclusively shown by the record that the sum of $2,088 has been paid to the claimant. There is no controversy presented in this connection. This being true, as shown by the majority opinion, the award of $7,200 against the Indemnity Fund must be revised. Otherwise, the effect would be to grant more than the maximum of $9,000 compensation. I, therefore, concur in the conclusion.